## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **AYODAPO OLADAPO, on behalf of himself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**SMART ONE ENERGY, LLC,**<br><br>**Defendant.** | **Case No. 1:14-cv-07117-LTS** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SMART ONE ENERGY, LLC'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

### ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................... 1

II.     PROCEDURAL AND FACTUAL BACKGROUND ....................................... 3

    A.      Procedural Background ........................................................................ 3

    B.      Factual Allegations .............................................................................. 4

III.    LEGAL ARGUMENT .................................................................................... 6

    A.      Motion to Dismiss Standard ................................................................. 6

    B.      Maryland Law Governs Plaintiff's Common Law Claims..................... 7

    C.      Plaintiff's Fraud-Based Causes of Action (Counts II, III, and V) Fail to
        State a Claim and Should Be Dismissed ............................................... 8

        1.      Smart One Did Not Represent That Its Rates Would Rigidly
            and Exclusively Track or Be Lower Than WG's Rates,
            And It Is Unreasonable For Plaintiff to Rely on Such Alleged
            Misrepresentation ..................................................................... 9

        2.      The Challenged "Saving" and "Competitive" Rates Claims
            Are Qualified and Constitute Non-Actionable Puffery ............. 11

        3.      Smart One Had No Duty to Disclose Any of the Alleged
            Omitted Facts to Plaintiff ......................................................... 15

        4.      Plaintiff's Fraud-Based Claims Are Not Pled With the
            Required Specificity Under Fed. R. Civ. P. 9(b) ...................... 17

    D.      The Combined Breach of Contract and Breach of Implied Covenant of
        Good Faith and Fair Dealing Claim Should Be Dismissed (Count I) .................. 19

    E.      Plaintiff's Unjust Enrichment Claim Fails Because the Rate Charged is
        Established by A Valid Contract Between the Parties (Count IV)........................ 23

IV.     CONCLUSION ............................................................................................ 25

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*21st Century Props. v. Carpenter Insulation and Coatings Co.*,
    694 F. Supp. 148, 154 n.7 (D. Md. 1988)............................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................6

*Baney Corp. v. Agilysys NV, LLC*, 773 F. Supp. 2d 593 (D. Md. 2011) ......................11

*Bank of Am., N.A. v. Jill P. Mitchell Living Trust*,
    822 F. Supp. 2d 505 (D. Md. 2011).....................................................................10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................6, 10

*Best v. Bell*,
    No. 13 Civ. 0163(JPO), 2014 WL 1316773 (S.D.N.Y. Mar. 28, 2014)..................6

*Bologna v. Allstate Ins. Co.*,
    138 F. Supp. 2d 310 (S.D.N.Y. 2001) .................................................................21

*Circle Click Media LLC v. Regus Mgmt. Group LLC*,
    No. 12-04000, 2013 WL 1739451 (N.D. Cal. Apr. 22, 2013)...............................13

*Citaraminis v. Hallowell*,
    613 A.2d 964 (Md. 1992) ...................................................................................24

*Cohen v. Hertz Corp.*,
    No. 13 Civ. 1205(LTS)(AJP), 2013 WL 9450421 (S.D.N.Y. Nov. 26, 2013)
    (Swain, J.)..........................................................................................7,5, 17, 18

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
    911 F.2d 242 (9th Cir. 1990) .........................................................................12, 13

*Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*,
    747 A.2d 600 (Md. 2000) ..............................................................................23, 24

*Dolan v. Fairbanks Capital Corp.*,
    No. 03-CV-3285, 2008 WL 4515932 (S.D.N.Y. Sept. 30, 2008) ...........................9

*Ergowerx Int'l, LLC v. Maxell Corp. of Am.*,
  18 F. Supp. 3d 430 (S.D.N.Y. 2014) .................................................................... 7, 18

*Faistl v. Energy Plus Holdings, LLC*,
  No. 12-2879, 2012 WL 3835815 (D.N.J. Sept. 4, 2012) ....................... 3, 13, 14, 15, 17, 24

*Fink v. Time Warner Cable*,
  810 F. Supp. 2d 644 (S.D.N.Y. 2011) ................................................................. 11, 12

*Forsyth v. Humana, Inc.*,
  114 F.3d 1467 (9th Cir. 1997) .................................................................................. 13

*Gabayzadeh v. Brafman*,
  No. 09 Civ. 4095(PAC)(JCF), 2010 WL 6620688 (S.D.N.Y. June 18, 2010) .................... 7, 17

*Goldstein v. Miles*,
  859 A.2d 313 (Md. App. 2004) .................................................................................. 11

*Gordon & Breach Science Publishers S.A. v. Am. Inst. of Physics*,
  905 F. Supp. 169 (S.D.N.Y. 1995) ............................................................................. 12

*Gordon v. Lewis*,
  81 A.3d 491 (Md. App. 2013) ..................................................................................... 8

*Hogan v. Md. State Dental Ass'n*,
  843 A.2d 902 (Md. App. 2004) .................................................................................. 16

*Imagine Medispa, LLC v. Transformations, Inc.*,
  999 F. Supp. 2d 873, 881 (S.D. W.Va. 2014) ............................................................ 11,12

*In re Gen. Motors Corp. Anti-Lock Brake Liab. Litig.*,
  996 F. Supp. 1525 (E.D. Mo. 1997) ........................................................................... 21

*James v. Goldberg*, 261 A.2d 753 (Md. 1970) ............................................................... 10

*Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012) .................................................... 13

*Latty v. St. Joseph's Soc'y of Sacred Heart*,
  17 A.3d 155 (Md. App. 2011) .................................................................................... 15

*Lloyd v. Gen. Motors Corp.*,
  916 A.2d 257 (Md. 2007) ........................................................................................... 8

*Louers v. Lacy*,
  No. 102292, 2013 WL 6257572 (D. Md. Dec. 3, 2013) ............................................... 23, 24

*McCarthy, Wilson & Ethridge v. Provident Life and Accident Ins. Co.*,
  No. 00-2581, 2000 WL 1929780 (D. Md. Dec. 18, 2000) ................................................ 18

iii

*McGraw v. Loyola Ford, Inc.,*
   723 A.2d 502 (Md. App. 1999) ............................................................................ 12

*Md. Envtl. Trust v. Gaynor,*
   803 A.2d 512 (Md. 2002) .................................................................................... 16

*Metro Mobile CTS, Inc. v. Newvector Commc'ns, Inc.*
   643 F. Supp. 1289 (D. Ariz. 1986) ..................................................................... 13

*Metzner v. D.H. Blair & Co.*
   689 F. Supp. 262 (S.D.N.Y. 1988) ..................................................................... 12

*Mt. Vernon Props., LLC v. Branch Banking & Trust Co.,*
   907 A.2d 373 (Md. App. 2006) ........................................................................... 22

*Peterson v. Wells Fargo Bank, N.A.,*
   No. 13-cv-03392, 2014 WL 1911895 (N.D. Cal. May 13, 2014) ........................ 19

*Procter & Gamble Co. v. Kimberly-Clark Corp.,*
   569 F. Supp. 2d 796 (E.D. Wisc. 2008) ............................................................. 13

*Riggs Nat'l Bank v. Linch,*
   36 F.3d 370 (4th Cir. 1994) ............................................................................... 20

*Robinson v. Am. Honda Motor Co., Inc.,*
   551 F.3d 218 (4th Cir. 2009) ............................................................................. 12

*Royal Inv. Grp., LLC v. Wang,*
   961 A.2d 665 (Md. App. 2008) ........................................................................... 23

*RRC Ne., LLC v. BAA Md., Inc.,*
   994 A.2d 430  (Md. 2010) ................................................................................... 20

*Sass v. Andrew,*
   832 A.2d 247 (Md. App. 2003) ............................................................................. 8

*Shreve v. Sears, Roebuck & Co.,*
   166 F. Supp. 2d 378 (D. Md. 2011) ................................................................... 18

*Slack v. Suburban Propane Partners, LP,*
   No. 10-2548, 2010 WL 5392845 (D.N.J. Dec. 22, 2010) ........................ 3, 12, 14, 24

*Stewart v. Bierman,*
   859 F. Supp. 2d 754 (D. Md. 2012) ..................................................................... 8

*Suburban Mortg. Assocs. v. Exel Props.,*
   176 F.3d 476, 1999 U.S. App. LEXIS 7524 (4th Cir. Mar. 3, 1999) ................... 20

*Szymczak v. Nissan N. Am.*,
  No. 10 CV 7493(VB), 2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011) ...................................6,7

*United States Achievement Academy, LLC v. Pitney Bowes, Inc.*,
  458 F. Supp. 2d 389 (E.D. Ky. 2006)................................................................................. 13

*Walters v. McMahen*,
  684 F.3d 435 (4th Cir. 2012) .............................................................................................. 6

*Willis v. Bank of Am. Corp.*,
  No. 13-02615, 2014 WL 3829520 (D. Md. Aug. 1, 2014)...................................................... 15

*Wiskind v. JPMorgan Chase Bank, N.A.*,
  No. 14-cv-04223, 2015 WL 1798962 (N.D. Cal. Apr. 17, 2015) .......................................... 19

*Zahn v. N. Am. Power & Gas, LLC*,
  No. 14 C 8370, 2015 WL 2455125 (E.D. Ill. May 22, 2015)................................3,10,11,21,22

**Statutes**

Maryland Consumer Protection Act, Md. Com. Law §§ 13-101, *et. seq*..............................passim

**Other Authorities**

L. Civ. R. 7.1 ............................................................................................................................1

Fed. R. Civ. P. 8........................................................................................................................7

Fed. R. Civ. P. 9(b)............................................................................................................passim

Fed. R. Civ. P. 12................................................................................................................1, 6

Pursuant to Fed. R. Civ. P. 12 and L. Civ. R. 7.1(a)(2), defendant Smart One Energy, LLC ("Smart One") respectfully submits this memorandum of law in support of its motion to dismiss all counts set forth in Plaintiff's Second Amended Complaint ("SAC").  (ECF 35).

## I.    <u>INTRODUCTION</u>

The SAC represents Plaintiff's third attempt to state an actionable claim against Smart One arising out of what amounts to nothing more than his unhappiness with Smart One's variable rates.  This third effort fares no better than his previous two complaints, which Plaintiff acknowledges may have been "deficien[t] otherwise warranting dismissal."  Pl.'s Opp'n to Mot. to Dismiss Am. Compl.  ECF 26, at 23.  Once again, Plaintiff alleges that he was the victim of a so-called "bait-and-switch" scheme.  He claims that he switched his energy service to a Smart One variable rate contract based on upon generalized promises of "savings" and "competitive market-based rates," and the implication that any changes in Smart One's rates would stem exclusively from, and be tied rigidly to, changes in prevailing "[gas] market conditions," SAC, ¶ 1, which Plaintiff interprets to mean solely the rates charged by his local utility, Washington Gas ("WG").  *Id.* at ¶¶ 20-21.  Further, Plaintiff alleges that Smart One falsely "guarantee[s] consumers 10% reduced rates" during the first two months of enrollment.  *Id.* at ¶¶ 22, 41 & 83.  Notably, nowhere in his SAC does Plaintiff assert that he did not receive the energy services for which he paid.  Rather, he alleges that he and the putative class were injured when they were charged rates higher than the rates charged by WG "because they ***believed*** that they would receive cost savings."  *Id.* at ¶ 15 (emphasis added).

Plaintiff's SAC still fails to state a claim.  With respect to Plaintiff's fraud-based claims, none of the documents upon which those claims are premised – a May 2013 *Clipper* magazine advertisement, a version of the Smart One website, and Smart One's Welcome Letter – contain

any misrepresentations or omissions regarding the rates Smart One would charge, how those rates would be set, or whether and when any guaranteed savings would occur.   Smart One's general representations of "savings" and "competitive" rates are nothing more than puffery, and its express claim of "up to 10% savings" is qualified rendering it non-actionable.   Further, the written agreement governing the relationship between Plaintiff and Smart One (the "Contract") explicitly provided that, because he had entered into a Smart One variable rate plan, after the first month of service, his rate could vary month-to-month "*at [Smart One's] sole discretion*, in response to changing gas market conditions."   *See* Declaration of Elizabeth D. Silver ("Silver Decl."), Exh. 1, at 1 (emphasis added).   The Contract did not contain any cap or limitation on the amount that Plaintiff's rate could increase each month, and Plaintiff had the right to terminate the Contract at any time and for any reason, such as his unhappiness with Smart One's rates, without penalty. *See id.* at 2.

The Welcome Letter, which was not sent to Plaintiff until after he already had enrolled with Smart One, explicitly states that Smart One would provide Plaintiff with "up to 10% savings on the [WG] variable gas supply charges for two months and generally remain competitive in the industry." *Id.* at 1.  A Smart One sales representative who allegedly spoke to Plaintiff reiterated that Plaintiff "would save up to 10% by switching from [WG] to Smart One." SAC, ¶ 19.[1]  Neither the Welcome Letter nor Smart One's sales representative, however, made a guarantee of any specific minimum amount of savings – or any savings at all – in any particular month.  Plaintiff's idiosyncratic interpretations of Smart One's representations are contradicted by the express terms of the documents that form the cornerstone for his fraud-based claims (Counts II, III, and V).  Thus, the claims should be dismissed.  The fraud-based claims also fail

---

[1]      Plaintiff does not allege that that representative made any representations about competitive rates or how Smart One determines its variable rate.

because Smart One owed no legal duty to Plaintiff to disclose any of the facts it allegedly omitted. Likewise, Plaintiff's combined breach of contract and breach of implied covenant of good faith and fair dealing claim (Count I) fails because he still does not make any factual allegations regarding the breach of any provision of the Contract. Finally, his unjust enrichment claim (Count IV) fails because the rates Smart One charged are governed by the terms of Plaintiff's Contract with Smart One.

In strikingly similar cases against energy suppliers involving facts and allegations nearly identical to those raised by Plaintiff here – *Faistl v. Energy Plus Holdings, LLC*, No. 12-2879, 2012 WL 3835815 (D.N.J. Sept. 4, 2012), *Slack v. Suburban Propane Partners, LP*, No. 10-2548, 2010 WL 5392845 (D.N.J. Dec. 22, 2010), and, just two weeks ago, *Zahn v. N. Am. Power & Gas, LLC*, No. 14 C 8370, 2015 WL 2455125 (E.D. Ill. May 22, 2015) – courts have not hesitated to grant the defendants' motions to dismiss for the same reasons detailed in this Motion. As described below, Plaintiff's SAC fails to correct the numerous deficiencies that plagued his first two complaints and he remains unable to state a viable claim against Smart One. Thus, the SAC should be dismissed with prejudice in its entirety.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

### A.   Procedural Background

Just over nine months ago, on September 4, 2014, Plaintiff filed his initial class action complaint against Smart One, alleging violation of New York's General Business Law ("GBL"), breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, negligent misrepresentation, and unjust enrichment. ECF 1. On December 5, 2014, Smart One moved to dismiss all counts. *See* ECF 17. However, during the December 12, 2014 status conference, this Court permitted Plaintiff to amend his Complaint.

On January 16, 2015, Plaintiff filed his First Amended Complaint ("FAC"), which was

3

substantially similar to his original complaint, except that his GBL claim was replaced with a claim under the Maryland Consumer Protection Act ("MCPA"), Md. Code, Com. Law §§ 13-101, *et seq.*, and his breach of contract and breach of implied covenant claims were merged into a single count.  Despite these amendments, Plaintiff failed to cure the deficiencies present in his initial Complaint.  Smart One, again, moved to dismiss all counts on February 13, 2015.  *See* ECF 22.  Plaintiff opposed Smart One's motion and, in the concluding section of his brief, "ask[ed] that the Court grant him leave to file a[ second] amended complaint to cure any deficiencies otherwise warranting dismissal." ECF 26, at 23.  Following the submission of Smart One's reply brief, the Court granted Plaintiff's informal request for leave to amend and allowed Plaintiff until April 15, 2015 to file his SAC.  ECF 31.  Plaintiff's SAC asserts the same five causes of action as were contained in his FAC.  While Plaintiff attempts to cure the rampant shortcomings of his previous complaints, as described below, the core factual allegations are nearly identical.  The SAC, like his previous complaints, cannot survive dismissal.

**B.      Factual Allegations**

Plaintiff, a Maryland resident, claims that, in May 2013, he reviewed a Smart One advertisement in *Clipper* magazine, which allegedly promised that consumers who switched to Smart One would save up to 10% on their energy bill.  SAC, ¶ 18.  After reviewing that ad, Plaintiff claims to have visited Smart One's website, where he viewed representations regarding cost savings generally and "competitive month-to-month pricing." *Id.* at ¶¶ 10, 18.  Allegedly, Plaintiff then called Smart One and spoke with an unidentified representative who, again, told him that he would save up to 10% by switching his gas service to Smart One.  *Id.* at ¶ 19.  Plaintiff asserts that, "[a]s a result of this promise," and nothing else, he switched his gas service from WG to Smart One in or about June 2013.  *Id.*

After switching service, Plaintiff received a Welcome Letter from Smart One along with

a copy of his Contract. *Id.* The Welcome Letter stated that Smart One was "happy to guarantee [Plaintiff] up to 10% savings on the [WG] variable gas supply charges for two months and generally remain competitive in the industry." *Id.* at ¶ 20. The Contract, which Plaintiff does not claim to have seen until ***after*** enrolling with Smart One when it was sent to him, explained how Smart One's variable rate was determined each month: "the monthly price will be determined by Smart [One] at its sole discretion, in response to changing gas market conditions." *See id.* & Silver Decl., Exh. 1, at 1 (emphasis added). The Contract contains no cap on the amount by which Plaintiff's rates could decrease or increase each month. It also gave Plaintiff the right to terminate the Contract at any time and for any reason without penalty. Silver Decl., Exh. 1, at 2.

Plaintiff claims that, after enrolling with Smart One, Smart One exercised its contractual discretion and charged Plaintiff gas rates that were higher than WG's rates. SAC, ¶ 20. Because Smart One's rates purportedly were higher than WG's, Plaintiff asserts that "the increases in Smart One's prices bore no correlation to currently prevailing 'gas market conditions.'" *Id.* at ¶ 21. In other words, Plaintiff impliedly defines "gas market conditions" as solely being WG's rates. Plaintiff also alleges that Smart One failed to give him "the guaranteed 10% savings during the first two months as promised," *id.* at ¶ 22; *see also id.* at ¶ 23, although the express terms of the Welcome Letter do not guarantee 10% savings during the first two months (or any specific amount of savings at all in any particular month), nor did the *Clipper* magazine ad, Smart One website, or the Smart One representative with whom Plaintiff spoke. *Cf. id.* at ¶¶ 18-20; Silver Decl., Exh. 1, at 1. Finally, Plaintiff claims that Smart One's rates "were never competitive," although he fails to identify to what Smart One's rates should be compared (*i.e.*, other retail suppliers, WG or some other utility, etc.).

5

In sum, Plaintiff's complaint is a deficient attempt to transform non-actionable puffery and qualified representations about potential savings into "promise[s of] energy cost savings and competitive market rates," SAC, ¶ 5; and alter or disregard, the express and unambiguous terms of Smart One's Contract, which gives Smart One discretion to lower or raise its variable rates monthly based broadly on "changing gas market conditions." *Id.* at ¶ 20.

## III.    LEGAL ARGUMENT

### A.    Motion to Dismiss Standard

In order to survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). As the Supreme Court has explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . .

*Id.* at 555. *Ashcroft v. Iqbal* further refined this pleading standard, emphasizing the distinction between factual contentions and legal conclusions, and cautioning against accepting as sufficient "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." 556 U.S. 662, 678 (2009). After *Twombly* and *Iqbal*, "'complaints in civil actions [must] be alleged with greater specificity than previously was required.'" *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Post *Iqbal*, this Court has espoused upon the "two working principles" in determining a motion to dismiss. First, the factual and legal elements of a claim should be separated, with the Court accepting the complaint's well-pleaded facts as true and disregarding any legal conclusions. *Best v. Bell*, No. 13 Civ. 0163(JPO), 2014 WL 1316773, at *4 (S.D.N.Y. Mar. 28,

2014). Second, the "well-pleaded factual allegations" in the complaint must "plausibly give rise to an entitlement for relief." *Szymczak v. Nissan N. Am.*, No. 10 CV 7493(VB), 2011 WL 7095432, at *7 (S.D.N.Y. Dec. 16, 2011); *Best*, 2014 WL 1316773, at *4. Thus, a complaint must both allege the plaintiff's entitlement to relief and "show" such an entitlement with properly pled facts. As a result, a complaint that does not contain sufficient facts to support a plausible claim for relief cannot survive a motion to dismiss.

In addition to Rule 8 strictures, if a plaintiff makes fraud claims, they must be stated with a greater level of particularity. *Cohen v. Hertz Corp.*, No. 13 Civ. 1205(LTS)(AJP), 2013 WL 9450421, at *4 (S.D.N.Y. Nov. 26, 2013) (Swain, J.). "'[I]n order to comply with Rule 9(b), the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Id.* (citation omitted); *Ergowerx Int'l, LLC v. Maxell Corp. of Am.*, 18 F. Supp. 3d 430, 445 (S.D.N.Y. 2014) ("allegations of fraud must contain the who, what, when, where, and how: the first paragraph of any newspaper story") (internal quotations and citations omitted).[2] The details must be alleged with enough specificity to give the defendant fair and reasonable notice of the claim and the grounds upon which it is based. *Gabayzadeh v. Brafman*, No. 09 Civ. 4095(PAC)(JCF), 2010 WL 6620688, at *4 (S.D.N.Y. June 18, 2010). As set forth below, and as found by other courts confronted with nearly identical claims, Plaintiff has failed to meet the pleading requirements under Fed. R. Civ. P. 8 and 9(b).

## B.   Maryland Law Governs Plaintiff's Common Law Claims

The parties agree that Maryland law, as opposed to New York law, should be applied to all claims in this matter. In response to the choice of law argument contained in Smart One's

---

[2]   "Where a fraud claim is based on an omission, 'the Complaint must still allege what the omissions were, the person responsible for failing to disclose, the context of the omission and the manner in which it misled Plaintiff, and what Defendant obtained through the fraud.'" *Szymczak*, 2011 WL 7095432, at *19.

original motion to dismiss Plaintiff's Complaint, Plaintiff withdrew his New York statutory claims in favor of Maryland statutory claims – specifically, the MCPA. *See* ECF 19.  Plaintiff likewise conceded in opposition to Smart One's previously filed motion to dismiss the FAC that Maryland law applies to the common law breach of contract, fraud, negligent misrepresentation, and unjust enrichment claims.  *See* ECF 26 at 4, 10, 17 & 21.  As such, choice of law is not disputed, and Maryland law applies.

## C.     Plaintiff's Fraud-Based Causes of Action (Counts II, III, and V) Fail to State a Claim and Should Be Dismissed

"[A] consumer bringing a private cause of action under [the MCPA] must allege (1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012) (citing cases).  Plaintiff's common law fraud-based claims share similar essential elements.  Under Maryland law, a plaintiff must demonstrate: (1) a false representation by the defendant to the plaintiff (falsity); (2) defendant's knowledge of the falsity (knowledge); (3) intent to defraud the plaintiff (intent); (4) justifiable reliance by the plaintiff upon the misrepresentation (justifiable reliance); and (5) compensable injury or damage suffered by the plaintiff as a result of the misrepresentation (injury).  *See Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 273 (Md. 2007) (negligent misrepresentation); *Sass v. Andrew*, 832 A.2d 247, 260 (Md. App. 2003) (fraud).

To state a cause of action for fraudulent concealment, the plaintiff must establish the same intent, justifiable reliance, and injury elements as fraud, fraudulent inducement, and negligent misrepresentation claims, but also show that the defendant owed a duty to the plaintiff to disclose a material fact and that the defendant failed to disclose that fact.  *See Gordon v. Lewis*, 81 A.3d 491, 500-501 (Md. App. 2013).  This "duty of care" element is essential to a negligent misrepresentation claim under Maryland law as well.  *Lloyd*, 916 A.2d at 273 (among

other elements, plaintiff must show "the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement").

None of Plaintiff's fraud-based claims states a cause of action. Plaintiff's common law fraud (Count II), negligent misrepresentation (Count III) and MCPA (Count V) claims all fail for the same reasons. Namely, Plaintiff cannot point to any specific representation by Smart One that is either false or misleading. To the contrary, Plaintiff concedes that Smart One disclosed to customers in the Contract that it had "sole discretion" to broadly set rates "in response to changing gas market conditions." In addition, all of the alleged misrepresentations are qualified and/or non-actionable puffery, upon which no reasonable consumer could rely. Lastly, the fraud claims are not pled with the specificity required under Fed. R. Civ. P. 9(b).

Plaintiff likewise has failed to state a cause of action for fraudulent concealment. Smart One had no obligation disclose to consumers purported "facts," such as that its rates are higher than its competitors, are "not competitive in the marketplace," and "will rarely ever be lower than the competitive market prices." SAC, ¶¶ 52, 85-86. Nor did Smart One need to disclose "its [purported] plan to unilaterally raise customers' rates to above-market levels following the so-called introductory period." *Id.* at ¶ 50. Not only are these omitted "facts" themselves misleading and untrue, but Smart One owed no duty to disclose them. Thus, dismissal is appropriate with respect to all of Plaintiff's fraud-based claims.

        **1.**      **Smart One Did Not Represent That Its Rates Would Rigidly and Exclusively Track or Be Lower Than WG's Rates, and It Is Unreasonable for Plaintiff to Rely on Such Alleged Misrepresentations**

Plaintiff alleges that Smart One committed statutory and common law fraud when he was charged higher rates than those charged by WG during an eleven-month period. SAC, ¶¶ 15, 20, 50-52, 84. However, Plaintiff fails to plead facts sufficient to support the alleged falsity of any

statement made by Smart One.  In particular, he points to no actual representation in which Smart One promised that its rates rigidly and exclusively would track on a one-to-one basis, or consistently be lower than, WG's rates.  Rather, as Plaintiff concedes, his Contract with Smart One provided for a "variable month to month" plan, where the rate charged to him would be determined "by Smart [One] at its sole discretion, in response to changing gas market conditions."  Silver Decl., Exh. 1, at 1.  This language is fatal to Plaintiff's fraud-based claims. With the broad degree of discretion afforded to Smart One in setting its variable rates, no reasonable consumer could interpret the Contract as a guarantee that Smart One's rates would track rigidly or be based exclusively on WG's rates, or always be lower than those rates.  *See Zahn,* 2015 WL 2455125, at * 4.[3]

Under Maryland law, "[a] person cannot reasonably believe in the full truth of an alleged misrepresentation that directly contradicts the terms of a contract to which the person is a signatory."  *Bank of Am., N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 537 (D. Md. 2011) (citing *James v. Goldberg*, 261 A.2d 753, 758 (Md. 1970)); *see also 21st Century Props. Co. v. Carpenter Insulation and Coatings Co.*, 694 F. Supp. 148, 154 n.7 (D. Md. 1988) ("it is extremely unlikely that the [Maryland Court of Appeals] would so rule [that a negligent misrepresentation claim may be maintained based upon an alleged misrepresentation contradicted by an express contractual term].  To permit such actions would be to open all contracts to litigation and instill uncertainty in every commercial transaction.").

---

[3]     In *Zahn,* the plaintiff made a similar allegation – that the "market price factors" identified in the energy supplier-defendant's contract upon which its variable rates were based was approximated by the local utility's rate. *Zahn,* 2015 WL 2455125, at *4 n.1.  The court accepted that characterization of the defendant's contract for purposes of the motion to dismiss "but note[d] that it is somewhat perplexing that [plaintiff] would leave [her utility], apparently dissatisfied with its pricing, to become a . . . subscriber [of defendant] in hopes that [defendant's] 'market' pricing would rise and fall in tandem with the [utility] pricing she had just switched suppliers to escape." *Id.*  The same conundrum holds true with respect to Plaintiff's allegations here and reflects a lack of plausibility. *See Twombly,* 550 U.S. at 570.

In sum, while the SAC contains allegations supporting the claim that Smart One's rates were higher than WG's, it fails to allege that Smart One promised consumers that it rates always would be lower than or tied rigidly to the WG rate. Nor could it. The explicit language in the Contract belies any such claim. According to the Contract, Smart One could set prices in its "sole discretion" and "in response to changing gas market conditions." The SAC fails to allege any facts to support the claim that Smart One failed to do so. *See Zahn*, 2015 WL2455125, at *4 (dismissing consumer fraud claim due to absence of any allegations that "support the inference that prices did not rise and fall based on [factors identified by NAPG as affecting price].".). Rather, Plaintiff unreasonably construes "changing gas market conditions" – an express term of his Contract – to mean the rates charged by WG, when there is no reasonable basis to do so. Thus, the allegations in the SAC cannot support any fraud-based claim.

### 2.   The Challenged "Saving" and "Competitive" Rates Claims Are Qualified and Constitute Non-Actionable Puffery

Generalized claims of savings, low prices, and competitive rates constitute non-actionable "puffery." In *Baney Corp. v. Agilysys NV, LLC*, the District of Maryland delineated the requirements for an actionable advertising statement under Maryland law: "Maryland law distinguishes between statements that relate to material facts – which may give rise to cognizable claims – and vague generalities, statements of opinion, or puffery – which are deemed non-cognizable." 773 F. Supp. 2d 593, 609 (D. Md. 2011) (citing cases). Puffery is "'an exaggeration or overstatement expressed in broad, vague, and commendatory language.'" *Fink v. Time Warner Cable*, 810 F. Supp. 2d 644 (S.D.N.Y. 2011) (Swain, J.) (citation omitted); *Goldstein v. Miles*, 859 A.2d 313, 332 (Md. App. 2004). Puffery "'is not sufficient to support' either a fraud or negligent misrepresentation action, because 'such indefinite representations ought to put the person to whom they are made, upon the inquiry, and if he chooses to put faith

in such statements, and abstained from inquiry, he has no reason to complain.'" *Goldstein*, 859 A.2d at 332 (citation omitted).

Further, "bald assertions of price superiority constitute puffery if they are so sufficiently general that a consumer is unlikely to rely on the statement." *Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 873, 881 (S.D. W.Va. 2014); *see also Metzner v. D.H. Blair & Co.* 689 F. Supp. 262, 64 (S.D.N.Y. 1988) ("Guarantees, and assurances of [financial] success generally, are merely 'puffery'"). The determination of whether an advertisement constitutes puffery is usually decided as a matter of law, appropriate to be decided on a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990) (citing *Metzner* and other Southern District of New York cases); *Fink*, 810 F. Supp. 2d at 644 (determining whether challenged claims constituted non-actionable puffery at dismissal stage).

The District of New Jersey's decision in *Faistl* is illustrative. There, the plaintiff filed a class action alleging that the defendant lured potential customers by making exaggerated claims of energy savings and competitive rates, when, in fact, the purported savings were illusory and consumers ended up paying substantially higher rates for their energy. 2012 WL 3835815, at *1. The defendant advertised, among other things, that consumers could "[s]ave on your bill – Energy Plus customers are currently saving with a competitive rate that is approximately 10% below your local utility company," and "[s]ave up to 10%." *Id.* In its advertising and contracts, the defendant disclosed the variable nature of its rates: "The Energy Plus rate is variable and therefore subject to change each billing cycle" (in advertising), and the "[v]ariable price each month will reflect the cost of electricity . . . and other market factors . . ." (in contracts). *Id.* at *2. Within a month of enrolling with the defendant, the plaintiff began paying as much as 36%

more for his electric service than he did during his initial fixed-rate period, and his variable rates were "significantly more" than other suppliers' rates. *Id.* at *3.

The *Faistl* plaintiff asserted, among other things, statutory and common law fraud claims. However, the court held that the claims failed because the defendant had disclosed that its rates may vary each billing cycle. More specifically, with respect to the common law fraud claim, the court found that there was no affirmative misrepresentation as to the fact or amount of savings a consumer would realize by enrolling with the defendant because the "savings" claim was not a guarantee of any specific percentage of savings, "particularly when read in conjunction with" the variable rate disclosures in Energy Plus's advertising and contract. *Id.* at *4.

Similarly, in *Slack*, 2010 WL 5392845, the District of New Jersey dismissed the plaintiff's complaint, alleging, among other things, violations of various states' consumer protection statutes, and unjust enrichment, which were asserted against a nationwide marketer and distributor of energy products, including propane. In *Slack*, the defendant advertised that consumers would get the "best value" and that its prices were "competitive" with those charged by other companies, the plaintiffs claimed that "to the contrary, [defendant's] prices are generally higher than the prevailing market price for propane." *Id.* The court, however, found that the plaintiff's consumer fraud claims failed because the "best value" and "competitive prices" representations were non-actionable puffery, and the defendant explicitly reserved in its contract "the right to increase charges and/or fees in any amount [it] deemed fit (based upon 'market fluctuations and other factors')." *Id.* at *7. For many of the same reasons why the claims failed in *Faistl* and *Slack*, Plaintiff's claims against Smart One fail here as well.

Plaintiff's claims are based in significant part on a series of generalized statements from Smart One's website regarding savings and competitive pricing, such as "You want to save

money and energy, we want to help you achieve your goal" and "SMART ONE ENERGY offers competitive month to month pricing, resulting in significant savings on your Gas Supply which will vary depending on your State." *See* SAC, ¶ 10.  Courts in Maryland and elsewhere have found that advertising statements similar or identical to those challenged by Plaintiff here constitute mere "sales talk" or puffery, and, as such, cannot give rise to fraud liability. *See, e.g., Robinson v. Am. Honda Motor Co., Inc.*, 551 F.3d 218, 223 (4th Cir. 2009) (representation of "lowest operating cost" was "mere puffery"); *Imagine Medispa*, 999 F. Supp. 2d at 881 (dismissing false advertising claims challenging statements "West Virginia's Lowest Price Weight Loss and Skin Care Clinic" and "Lowest Prices in WV!"); *Slack*, 2010 WL 5392845, at *7 (advertisement that prices are "competitive" held to be puffery); *Gordon & Breach Science Publishers S.A. v. Am. Inst. of Physics*, 905 F. Supp. 169, 182 (S.D.N.Y. 1995) ("most cost-effective prices" and "subscription prices as low as possible" were mere puffery); *McGraw v. Loyola Ford, Inc.*, 723 A.2d 502, 512-14 (Md. App. 1999) (holding that "every consideration in pricing and/or trade in allowance has been given to reduce the settlement price to its lowest" claim was "obvious example[]" of puffery amounting to nothing more than "indefinite generality").[4]  Courts have found that even representations of specific amounts of future savings do not constitute actionable statements of facts because such claims merely serve as predictions

---

[4]     *See also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1481 (9th Cir. 1997) ("The commercials simply state that because Humana Insurance can 'control costs' the employers and employees can save money.  The district court accurately described such statements as 'puffery.'"), *overruled on other grounds*, *Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012); *Cook*, 911 F.2d at 245-46 (holding that statement "we're the low cost commercial collection experts" was puffery despite implication that defendant provided comparable services at lower rates than attorneys operating in same industry); *Circle Click Media LLC v. Regus Mgmt. Group LLC*, No. 12-04000, 2013 WL 1739451, at *10 (N.D. Cal. Apr. 22, 2013) ("Defendants' representations that their prices are 'low' . . . amount to puffing statements"); *Procter & Gamble Co. v. Kimberly-Clark Corp.*, 569 F. Supp. 2d 796, 799 (E.D. Wisc. 2008) ("When an advertiser claims his store [ ] has the 'lowest' prices or [best product], no one expects that consumers will take his claim at face value"); *United States Achievement Academy, LLC v. Pitney Bowes, Inc.*, 458 F. Supp. 2d 389, 397 (E.D. Ky. 2006) (marketing brochure statements, including "economic cost savings" held to be "example[s] of opinion and sales puffery; [they] will not support a fraud claim"); *Metro Mobile CTS, Inc. v. Newvector Commc'ns, Inc.* 643 F. Supp. 1289, 1293 (D. Ariz. 1986) (claim of "lower rate" constitutes non-actionable puffery), *rev'd without opinion*, 803 F.2d 724 (9th Cir. 1986).

and expressions as to future events.  *See, e.g., United States Achievement Academy*, 458 F. Supp.

at 397 (dismissing fraud count challenging statement that defendant's system would produce a

"savings per year" of $279,152.70 because "[t]his is purely a prediction of future savings and not

a statement of fact").

Likewise, the statement in Smart One's Welcome Letter that it will save consumers "up

to 10%" is not actionable because of the qualified nature of the phrase.  *Fink v. Time Warner

Cable*, 714 F.3d 739, 742 n.3 (2d Cir. 2013) ("as the District Court [Swain, J.] unassailably

concluded, the phrase 'up to' would 'lead a reasonable consumer to expect that [Internet] speeds

could be less than the advertised [speeds]'"); *Cohen*, 2013 WL 9450421, at *4 ("up to 25%"

discount claim not actionable  because "[t]he advertisements at issue did not . . . represent that

[defendant's] customers were guaranteed a particular discount . . . nor did the advertisements

state that there was any minimum discount to which the customers were entitled"); *Faistl* 2012

WL 3835815, at *4 ("save up to 10% does not, without more, guarantee any particular

percentage of savings.").

Accordingly, because the statements Plaintiff challenges in his SAC amount to nothing

more than mere puffery, there can be no actionable misrepresentations as a matter of law.

Counts II, III, and V should be dismissed.

### 3.   Smart One Had No Duty to Disclose Any of the Alleged Omitted Facts to Plaintiff

Plaintiff's allegations, that Smart One did not disclose that its rates could be higher than

its competitors, were not competitive in the market, and would rise to "above-market levels"

after the introductory period, fail for many of the same reasons as stated above and because the

Contract clearly states that charges may fluctuate "Month to Month" at Smart One's "sole

discretion, in response to changing gas market conditions."  Exh. 1, at 1.  They also fail because

Smart One owed no duty to disclose such purportedly omitted "facts" to Plaintiff or any other consumer.

"Ordinarily, under Maryland law, a mere failure to disclose a material fact does not constitute fraud, in the absence of a legal duty to disclose that inheres in certain types of transactions." *Willis v. Bank of Am. Corp.*, No. 13-02615, 2014 WL 3829520, at *18 (D. Md. Aug. 1, 2014); *Latty v. St. Joseph's Soc'y of Sacred Heart*, 17 A.3d 155, 165 (Md. App. 2011) ("Absent an agreement or obligation to disclose, or a special relationship, non-disclosure cannot constitute fraud."). "Maryland recognizes no general duty upon a party to a transaction to disclose facts to the other party." *Md. Envtl. Trust v. Gaynor*, 803 A.2d 512, 516 (Md. 2002). In *Hogan v. Md. State Dental Ass'n*, 843 A.2d 902 (Md. App. 2004), the Maryland Court of Special Appeals affirmed the trial court's dismissal of statutory and common law fraud claims in a class action alleging that the defendant-dental associations deceived consumers by concealing the health risks of implanted fillings that contained toxic mercury. The appellate court explained that "non-disclosure does not constitute fraud unless a special duty to disclose exists," such as through a "confidential or fiduciary relationship." *Id.* at 908. Because the plaintiff had not alleged facts demonstrating that a confidential or fiduciary relationship existed between the parties giving rise to a duty to disclose, dismissal was affirmed. *Id.*

In his MCPA claim (Count V), Plaintiff alleges that Smart One failed to disclose that (1) "on a consistent basis, the Company's regular rates are substantially higher than its competitors and not competitive in the market place;" and (2) its rates "generally increase and will rarely ever be lower than the competitive market prices." SAC, ¶¶ 85-86. Plaintiff makes duplicative omission allegations in Count II, and further alleges that Smart One fraudulently concealed "material information regarding its plan to unilaterally raise customers' rates to above-market

levels following the so-called introductory period." *Id.* at ¶ 50.  Plaintiff also alleges, that Smart One fraudulently concealed from consumers "that during the introductory period their energy rates were guaranteed to decrease by up to 10%." *Id.* at ¶ 54.  This last concealment claim defies logic, as Plaintiff contends at the same time, that Smart One's statement in the Welcome Letter guaranteeing "up to 10% savings" is an affirmative representation; it cannot be both.

These alleged omissions are really no different than Plaintiff's misrepresentation claim, *i.e.*, that Plaintiff purportedly was guaranteed savings and would not have to pay more than a so-called "competitive rate."  *See*, *supra*, at Section III(C)(2).  Regardless Plaintiff has not alleged any facts to support the existence of a confidential or fiduciary relationship between him and Smart One sufficient to give rise to a duty to disclose.

As set forth above, the Contract Plaintiff received expressly contained the information necessary to correct his incorrect assumptions about Smart One's variable rate pricing.  Thus, Plaintiff's fraud-based claims (Counts II, III, and V) should be dismissed regardless of whether they are based on affirmative misrepresentations or omissions.  *See Faistl*, 2012 WL 3835815, at *4 (dismissing fraud claim based on alleged omission because, "[a]s to the alleged omission – failure to disclose that the rates charged would rise in the future – the actual terms of the parties' Agreement clearly indicates that . . . the monthly rates would be 'variable' . . .").

### 4.   Plaintiff's Fraud-Based Claims Are Not Pled With the Required Specificity Under Fed. R. Civ. P. 9(b)

In a diversity action where state law governs fraud-based claims, such as here, the pleading requirements of Fed. R. Civ. P. 9(b) apply.  *Cohen* 2013 WL 9450421, at *4.  Here by Plaintiff's own admission, Counts II, III, and V, sound in fraud as they arise from Smart One's marketing campaign for its energy services, which he alternately alleges was based on misrepresentations and omissions, and was "fraudulent," "deceptive," "misleading," and "false."

17

SAC, ¶¶ 50, 51, 53-58, 64-66, 80-84, 87.   Thus, Rule 9(b)'s heightened pleading standard applies.

Plaintiff's SAC, however, still lacks both the precision and adequate substantiation required under Rule 9(b) when alleging fraud.  *Gabayzadeh*, 2010 WL 6620688, at *4 (under Rule 9(b), plaintiff must identify with some precisions the dates, times, and places of the alleged misrepresentations).   While Plaintiff has provided slightly more in his SAC than he did in his previous pleadings with respect to the *Clipper* magazine advertisement and Smart One website that he allegedly viewed before switching to Smart One, his new assertion – that he spoke with a Smart One representative before switching service – is not pled with the specificity mandated by Rule 9(b).   For example, Plaintiff does not provide the name of the Smart One representative with whom he spoke or the date when that conversation took place.  *See* SAC, ¶ 19.   Further, Plaintiff fails to allege if and when he read the terms of Smart One's Contract, which forms the exclusive basis for his allegations regarding Smart One's alleged implied misrepresentation with respect to how it sets its variable rates (*i.e.*, that Smart One's rates "will stem from, and be tied to, changes in prevailing market conditions," which Plaintiff construes to mean WG's rates (*id.* at ¶¶ 1, 20-21)).   That shortcoming is notable as Plaintiff's fraud claims based on the Contract are not actionable if he did not review the Contract prior to enrollment.  *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 417 (D. Md. 2011) (alleged misrepresentations in owner's manual were not basis of plaintiff's bargain when he did not read manual until after purchase was made; consequently, no violation of MCPA occurred).   In short, Plaintiff has not provided the "who, what, when, where, and how" required by Rule 9(b).  *Ergowerx*, 18 F. Supp. 3d at 445.

This Court and others have not hesitated to dismiss similar complaints for failing to comply with Rule 9(b)'s heightened pleading requirements.  *See, e.g., Cohen*, 2013 WL

18

9450421, at *4 (dismissing fraud and misrepresentation claims where plaintiff failed to provide detail regarding the allegedly false discount-related statements made by defendant's customer service call representative, including the identity of the caller, the date or time of the call, or the exact statements made by the representative); *McCarthy, Wilson & Ethridge v. Provident Life and Accident Ins. Co.*, No. 00-2581, 2000 WL 1929780, at *3 (D. Md. Dec. 18, 2000) ("The pleading requirements of Rule 9(b) require that the source of alleged fraudulent statements be identified. The general reference to customer service representatives is insufficient to make the Defendant aware of the particular circumstances for which it will have to prepare a defense at trial.").[5] Plaintiff has tried twice before to satisfy his Rule 9(b) pleading burden, failing both times. His SAC remains deficient, telling Smart One nothing about the who, what, when, where, or how about Plaintiff's exposure to the alleged fraudulent statements made by Smart One's sales representative or contained within Smart One's Contract. Instead, he leaves both this Court and Smart One, who is required to defend against these claims, completely in the dark. Accordingly, Counts II, III, and V should be dismissed for failing to satisfy Rule 9(b).

**D.   The Combined Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing Claim Should Be Dismissed (Count I)**

Plaintiff's combined breach of contract and implied covenant of good faith and fair dealing claim fares no better. In Count I, Plaintiff alleges that Smart One breached the Contract:

---

[5]      *See also, e.g., Dolan v. Fairbanks Capital Corp.*, No. 03-CV-3285, 2008 WL 4515932, at *8 (S.D.N.Y. Sept. 30, 2008) ("Plaintiff fails to identify specific dates on which these alleged telephone conversations . . . took place . . . [or] the customer service representatives with whom he spoke. The pleading requirements of Rule 9(b) are designed to provide a defendant with sufficient information to formulate a defense. [Defendant] . . . is entitled to some indication as to the identities of the customer service representatives mentioned or, if nothing else, the dates of the telephone calls so that it might determine which representatives were on duty."); *Wiskind v. JPMorgan Chase Bank, N.A.*, No. 14-cv-04223, 2015 WL 1798962, at *3 (N.D. Cal. Apr. 17, 2015) (dismissing fraud-based claims on Rule 9(b) grounds where plaintiff "fail[ed] to identify the names of the JPMorgan representatives he spoke with" during various telephone conversations); *Peterson v. Wells Fargo Bank, N.A.*, No. 13-cv-03392, 2014 WL 1911895, at *5 (N.D. Cal. May 13, 2014) (Plaintiffs failed to satisfy Rule 9(b) where they "do not identify the name of the specific Wells Fargo representative with whom they spoke, [or] the specific date or time of the misrepresentation").

"(1) by failing to provide Plaintiff as well as other members of the Class any savings in the first two months and failing to remain competitive in the industry thereafter, and (2) by failing to set its rates in response to and consistent with changing gas market conditions."  SAC, ¶ 41. Plaintiff further claims that Smart One breached the implied covenant by charging him and the putative class "excessive and unjustifiable" rates.  *Id.* at ¶¶ 43-45.  Count I fails under Maryland law.

"[A] complaint alleging a breach of contract 'must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'"  *RRC Ne., LLC v. BAA Md., Inc.*, 994 A.2d 430, 440 (Md. 2010) (emphasis in original and citation omitted).  Moreover, the defendant's breach must be material.  *Id.* at 442.  "[I]n considering the sufficiency of a complaint alleging breach of contract, 'any ambiguity or uncertainty in the allegations is to be construed against the pleader.'" *Id.* at 440.  Further, the covenant of good faith and fair dealing "is of very narrow scope," does not create new contractual obligations, and cannot be used to vary the express terms of a contract.  *Suburban Mortg. Assocs. v. Exel Props.*, 176 F.3d 476, No. 98-1290, 1999 U.S. App. LEXIS 7524, at * 17 (4th Cir. Mar. 3, 1999).  Instead, it "simply prohibits one party to a contract from acting in such a manner as to prevent the other party from performing his obligations under the contract." *Id.*  Yet, even where the terms of a contract afford a party "sole discretion," the implied covenant cannot be used to "override or modify explicit contractual terms."  *Riggs Nat'l Bank v. Linch*, 36 F.3d 370, 373 (4th Cir. 1994).

Plaintiff has not pled the essential elements of a breach of contract claim and his assertions of bad faith do not help resuscitate the otherwise doomed allegation.  Specifically, Plaintiff fails to allege the breach of any actual contractual provision.  Rather, he tries to turn the

express terms of Smart One's Welcome Letter and the Contract into something that they are not. For example, despite acknowledging that the Welcome Letter simply states that Smart One would provide him with "*up to* 10% savings on the [WG] variable gas supply charges *for two months* and remain competitive in the industry," SAC, ¶ 40 (emphasis added), Plaintiff alleges that Smart One breached that promise because neither he or the putative class received savings "in the first two months" of their enrollments, and that Smart One's rates did not remain competitive in the industry. As a preliminary point, Smart One did not guarantee any specific amount of savings during the first two months of its customers' engagements. Rather, it promised only potential savings – *i.e.*, "up to 10%" – in two months, but not necessarily the first two. Silver Decl., Exh. 1, at 1. Further, because the qualified savings claim and representation of "competitive rates" constitute non-actionable puffery, *see supra* at Section III(C)(2), such representations cannot form the basis of a breach of contract claim in the first instance. *Bologna v. Allstate Ins. Co.*, 138 F. Supp. 2d 310, 323-24 (S.D.N.Y. 2001) (citing cases); *In re Gen. Motors Corp. Anti-Lock Brake Liab. Litig.*, 996 F. Supp. 1525, 1532 (E.D. Mo. 1997).

Finally, the terms of Plaintiff's Contract with Smart One speak for themselves. In particular, the Contract expressly and unequivocally provided that Plaintiff's variable rate would be set "at [Smart One's] sole discretion, in response to changing gas market conditions." Silver Decl., Exh. 1 at 1. Plaintiff claims that Smart One breached that variable rate term because its rates were higher than WG's rate during the same months that Plaintiff was a customer. *See* SAC, ¶¶ 21 (alleging that "the increases in Smart One's prices bore no correlation to currently prevailing 'gas market conditions'" because Smart One's rates exceeded the WG rates identified in the preceding paragraph of the SAC), 41. That the variable rate was higher than the local utility's rate is not a breach of the Contract, however, because the Contract does not reference

WG's rate as a benchmark or include a cap on rate increases, and it permits for Smart One's rates to exceed the local utility's. *See* Silver Decl., Exh. 1; *see also Zahn*, 2015 WL 2455125, at *5.

The Northern District of Illinois' recent decision in *Zahn* is instructive. In *Zahn*, the plaintiff argued that the defendant-energy supplier breached its contract with the plaintiff by charging rates that varied by factors other than those contained in the agreement and because the defendant's rates were higher than the rates offered by the plaintiff's utility. *Id.* ("[Plaintiff] again characterizes the disclosures as promising a rate that varies with the market price."). The court rejected the plaintiff's argument and dismissed the claim. In particular, the court held that the plain language of the contract belied the plaintiff's characterization and "[plaintiff's] characterizations are subordinate to the plain language of the contract." *Id.* (citation omitted). The court further explained:

> While [plaintiff] characterizes her Complaint as alleging that [defendant] varied its rates based on factors other than ones upon which the parties agreed, the Complaint contains no factual allegations to substantiate that assertion. . . . [T]he Complaint contains only factual allegations supporting the conclusion that [defendant] charged rates higher than [plaintiff's utility] and the average wholesale price . . . These facts alone do not plausibly allege that the [defendant's] rate was guided by factors other than ones in the [contract]. . . . [Plaintiff's] allegation that [defendant's] prices did not track [the utility's] price . . . . does not constitute an allegation that the rate [defendant] charge[d] did not vary based on those conditions [set forth in the contract].

*Id.* (internal citation omitted). Plaintiff's allegations against Smart One are similarly infirm as he alleges nothing more in support of his breach claim than that Smart One's rates were higher than WG's. SAC, ¶ 41.

At bottom, Plaintiff fails to allege the breach of any specific contractual provision, and the implied covenant of good faith and fair dealing cannot assist Plaintiff in his effort to insert into the Contract new terms providing that Smart One's rates had to be tied to or rigidly track the rates charged by WG, or that Plaintiff was entitled to a guaranteed savings during the first two

months of his enrollment.  Indeed, because a breach of the implied covenant "is merely part of an action for breach of contract," *Mt. Vernon Props., LLC v. Branch Banking & Trust Co.*, 907 A.2d 373, 381 (Md. App. 2006), absent a breach of a contractual term, there can be no breach of the implied covenant of good faith and fair dealing either.  Thus, Count I of Plaintiff's SAC should be dismissed with prejudice.

**E.      Plaintiff's Unjust Enrichment Claim Fails Because the Rate Charged is Established by a Valid Contract Between the Parties (Count IV)**

To state a claim for unjust enrichment under Maryland law, a plaintiff must establish (1) that he has conferred a benefit upon the defendant; (2) the defendant appreciates the benefit; and (3) the defendant's acceptance or retention of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit with the payment of its value.  *Royal Inv. Grp., LLC v. Wang*, 961 A.2d 665, 685 (Md. App. 2008).  Unjust enrichment cannot succeed where an express contract governs the parties' relationship.  *Louers v. Lacy*, No. 102292, 2013 WL 6257572, at *7 (D. Md. Dec. 3, 2013); *Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 607 (Md. 2000).  The enrichment of one party at the expense of the other is not unjust where it is permissible under the terms of an express contract.  *J. Roland Dashiell*, 747 A.2d at 600 ("Even if the County was enriched, such enrichment was not unjust because it was in strict compliance with the terms of [the] contract.").

Plaintiff alleges that ". . . Smart One has been unjustly enriched by their [sic] wrongful receipt of Plaintiff and Class members' monies."  SAC, ¶ 71.  According to Plaintiff, the receipt of those monies was wrongful because "Smart One knew or should have known that consumers' payments to Smart One were given and received with the expectation that consumers would be saving money on their energy bills as falsely represented by the Company," and because Smart One charged consumers "exorbitant undisclosed rated grossly out of line with prevailing market

conditions." *Id.*, ¶¶ 72-73. In other words, Plaintiff expected to pay less than he did. This alone, however, does not constitute unjust enrichment. Plaintiff had a valid contract with Smart One. The Contract contained the pricing terms by which Smart One received a monetary benefit from Plaintiff, and explicitly disclosed that these terms included a variable rate. As the variable rate was set forth in the parties' agreement, Smart One was not "unjustly enriched." *J. Roland Dashiell*, 747 A.2d at 600; *Louers*, 2013 WL 6257572, at *7.

Plaintiff's unjust enrichment claim fails to state a claim even if pled in the alternative to his breach of contract claim. Smart One has not retained any benefit without providing a service in exchange. Smart One provided energy service and received a benefit (payment). Plaintiff received energy service and paid for that service. Mere disagreement about the rate does not constitute unjust enrichment. It is difficult to ascertain how Smart One was unjustly enriched by charging for the energy service that Plaintiff admits he received. *Citaraminis v. Hallowell*, 613 A.2d 964, 972 (Md. 1992) (holding that, even if the lease were unenforceable by the landlords, the tenants' claim for unjust enrichment failed because they received the rental housing for which they paid).[6] Thus, the unjust enrichment claim (Count IV) should be dismissed.

---

[6]     *See also Faistl*, 2012 WL 3835815, at *8 ("Because Plaintiff received the gas and electric services he paid for, Plaintiff has failed to state a claim for unjust enrichment that is plausible on its face."); *Slack*, 2010 WL 5392845, at *9 (same).

IV.    **CONCLUSION**

For the foregoing reasons, Smart One respectfully requests that its Motion to Dismiss the Second Amended Complaint be granted and that Plaintiff's claims against it be dismissed with prejudice.

Dated:  June 8, 2015

KELLEY DRYE & WARREN LLP

By:    */s/ Joseph A. Boyle*
     Joseph A. Boyle
     101 Park Avenue
     New York, New York 10178
     Telephone: (212) 808-7800
     Facsimile: (212) 808-7897
     Email: jboyle@kelleydrye.com
           esilver@kelleydrye.com


By:    */s/ Daniel S. Blynn*
     Daniel S. Blynn (admitted *pro hac vice*)
     Shahin O. Rothermel
     VENABLE LLP
     575 7th Street, NW
     Washington, DC 20004
     Telephone: (202) 344-4000
     Facsimile: (202) 344-8300
     Email: dsblynn@venable.com
           sorothermel@venable.com


*Attorneys for Defendant Smart One Energy, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

       I hereby certify that on this 8th day of June, 2015, a copy of the foregoing Motion to Dismiss Plaintiff's Second Amended Complaint and Memorandum of Law in Support thereof were served on all counsel of record via the Court ECF System.


             By:    <u>/s/Joseph A. Boyle          </u>
                     Joseph A. Boyle