UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

AYODAPO OLADAPO, on behalf of himself
and all others similarly situated,

        Plaintiff,

  -v-                                            No.  14 CV 7117-LTS

SMART ONE ENERGY, LLC,

        Defendant.

-------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER

        Plaintiff Ayodapo Oladapo ("Plaintiff") brings this putative class action against Smart One Energy, LLC ("Defendant" or "Smart One"), a residential energy provider, asserting claims for breach of contract, fraud, negligent misrepresentation, unjust enrichment, and violation of Maryland's Consumer Protection Act, Md. Code § 13-101 et seq.  Plaintiff claims that he switched his energy supplier from the local utility, Washington Gas, to Smart One based on the latter's promise that Plaintiff would realize guaranteed savings on his energy bill, and that Smart One would charge "competitive market rates" for energy, but that in fact Plaintiff's bills consistently exceeded those he would have paid for service from the public utility.  The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(1) and (d)(2).

        Before the Court is Defendant's motion to dismiss Plaintiff's Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendant asserts that it did not breach any contract with Plaintiff, that Plaintiff's claims are based entirely on non-actionable puffery, and that Defendant's disclosures were not fraudulent.  For the reasons that follow, Defendant's motion is denied in its entirety.

BACKGROUND

The following facts are drawn from the SAC (docket entry no. 35) and are presumed to be true for the purposes of this motion to dismiss.

In or around May 2013, Oladapo, who received his energy supply from his local public utility, Washington Gas, saw a magazine advertisement for Smart One. In that advertisement, Smart One promised that customers would save up to 10% on their energy expenses by switching to Smart One. (SAC ¶ 18.) Intrigued by this advertisement, Oladapo visited Smart One's website, which contained statements such as "SMART ONE ENERGY offers competitive month to month pricing, resulting in significant savings on your Gas Supply which will vary depending on your State," and "Everything stays the same when you change to SMART ONE ENERGY, except for your increased savings." (SAC ¶ 10.) Oladapo then telephoned Smart One in order to learn more about their service. A Smart One representative told Oladapo that he would save up to 10% by switching from his local utility to Smart One. (SAC ¶ 19.) A Smart One Internet site included an article regarding energy supplier switching that recognized that Washington Gas was the primary provider in Maryland, and stated that switching "is a simple convenient transition from one supplier to another but at the end of the process if you are unable to save any money then the exercise would be futile." (SAC ¶ 12 n.2 and Ex. 2.)

Based on these statements by Smart One, Oladapo switched his energy suppliers from Washington Gas to Smart One in or around June 2013. (Id.) Smart One sent Oladapo a Welcome Letter shortly after Oladapo made this change. (SAC ¶ 20 & Ex. 1.) In the Welcome Letter, Smart One told Oladapo that it would "guarantee you up to 10% savings on the Washington Gas variable gas supply charges for two months and generally remain competitive

in the industry." (SAC Ex. 1.) The Welcome Letter, which characterized itself as a Residential Energy Supply Agreement, also stated that the variable monthly prices Smart One charges "will be determined by Smart [One] at its sole discretion, in response to changing gas market conditions." (Id.) It further provided that "This Agreement constitutes the entire Agreement between Customer and Smart [One]. No statement, promise or inducement made by either party that is not contained in this Agreement shall be valid or binding." (Id.)

Over the following eleven months, Smart One consistently charged higher rates for gas than did Washington Gas. (SAC ¶ 20.) In not one of the eleven months after Oladapo signed up for Smart One was Smart One's price per unit lower than Washington Gas's price. (Id.) In that time period, Smart One's rates increased steadily and never decreased, rising by 34%. The Smart One rates were at times as much as 35% higher than the Washington Gas rates. (SAC n.4.) Based on these differentials, Plaintiff alleges that Smart One's price increases "bore no correlation to currently prevailing 'gas market conditions'" and "the gas rates charged to [Plaintiff], despite steady declines in gas prices in the marketplace, steadily and substantially increased." (SAC ¶ 21.) Plaintiff further alleges that "Smart One knows and knew that, based on its business model and history of pricing, its rates would always be higher than market rates." (SAC ¶ 14.)

## DISCUSSION

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). This requirement is satisfied when the factual content in the complaint

"allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)). A complaint that contains only "naked assertions" or "a formulaic recitation of the elements of a cause of action" does not suffice. Twombly, 550 U.S. at 555. In making its Rule 12(b)(6) determinations, the Court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which [he] relied in bringing the suit." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). In deciding a Rule 12(b)(6) motion, a court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. See Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).

Breach of Contract (Count I)

Oladapo alleges that Smart One breached two contractual promises made in the Welcome Letter: (1) that Oladapo would realize "up to 10% savings" on his gas bill in the first two months of his commencing service with Smart One, and (2) that Smart One's rates would "remain competitive in the industry" thereafter. (SAC ¶ 20.)

Smart One does not dispute that it made certain promises to Oladapo. Rather, it contests the nature of those promises and their enforceability as a matter of law. Contrary to Plaintiff's assertion that Smart One's guarantee of savings of up to 10% for a two month period amounted to a guarantee of savings in the first two months of service, Smart One argues that it did not guarantee the savings for any particular two months and that Plaintiff therefore cannot state a claim for breach of the provision. The language is arguably ambiguous but, even if the

guarantee did not promise an introductory period, Plaintiff's allegation that no savings at all were provided within the first eleven months of service could, when read in the light most favorable to Plaintiff, support an inference of breach of the specific contract term.  See Catlin Specialty Ins. Co. v. Aron, 38 F. Supp. 3d 694, 702 (D. Md. 2014) (noting that, under Maryland law, contracts with ambiguous terms will be construed against the drafter).  Plaintiff's allegations are sufficient to state a breach of contract claim with respect to the "guarantee" of two months of up to 10% savings.

Smart One also argues that Oladapo cannot state a claim for breach of the promise that Smart One's rates would "remain competitive in the industry" because Smart One qualified that language by stating that prices would be set at Smart One's "sole discretion, in response to changing gas market conditions."  (SAC ¶ 20.)  In this connection, Smart One relies heavily on a number of cases from other jurisdictions, and one from the District of Maryland, in which similar contract breach claims have been dismissed in light of energy service providers' use of discretionary language alone or in combination with references to numerous factors other than market prices.  See Daniyan v. Viridian Energy LLC, No. GLR-14-2715, 2015 WL 4031752, at *3 (D. Md. June 30, 2015) (dismissing breach of contract claim where utility "explicitly stated on its website and in its marketing material that its rates may be higher than the utility's rates").  The case on which Smart One principally relies, Zahn v. North American Power & Gas, LLC, No. 14 C 8370, 2015 WL 2455125, at *5 (N.D. Ill. May 22, 2015), is inapposite here, as the contractual provision in that case explicitly included non-market-based factors – most importantly, an explicit carve-out for "profit" and a statement that the private utility's prices "may be higher or lower" than the public utility's.  Id. at *1.  Smart One's contractual representations to Oladapo contained no such language.

Not surprisingly, Plaintiff proffers citations to decisions, based on narrower contract language, denying dismissal motions in similar cases.  See, e.g., Claridge v. N. Am. Power & Gas, LLC, No. 15 CV 1261, 2015 WL 5155934, at *6 (S.D.N.Y. Sept. 2, 2015) (under New York law, denying motion to dismiss breach of contract claims where private utility promised to charge "variable market based rates"); Yang Chen v. Hiko Energy, LLC, No. 14 CV 1771, 2014 WL 7389011, at * (S.D.N.Y. Dec. 29, 2014) (under New York law, denying motion to dismiss breach of contract claims where private utility promised to charge rates based on wholesale costs and "other market-related factors").

Here, Smart One's reference to Washington Gas as the default supplier, its undertaking to set prices "in response to changing gas market conditions," and its representation that it will "generally remain competitive in the industry" are ambiguous and are susceptible, when read in the light most favorable to Plaintiff, to interpretation as an undertaking to set prices in a manner reflective of actual gas market prices and to be at least competitive with the main utility supplier in the area – Washington Gas.  Plaintiff's allegations that Smart One's prices bore an inverse relationship to Washington Gas' supply pricing are sufficient, at the pleading stage, to support an inference of breach of Smart One's contractual undertakings.  Oladapo has sufficiently alleged a breach of contract, and Defendant's motion to dismiss is denied as to Count I.

Violation of the Maryland Consumer Protection Act (Count V) and Common Law Fraud (Count II)

To state a claim under the Maryland Consumer Protection Act ("MCPA"), Md. Code § 13-301, "the consumer must have suffered an identifiable loss, measured by the amount

the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation." Lloyd v. General Motors Corp., 397 Md. 108, 143 (Ct. App. 2007). Similarly, under Maryland's common law, a claim for fraud requires the Plaintiff to prove: "(1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation." Nails v. S & R, Inc., 334 Md. 398, 415 (Ct. App. 1994).

Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Particularity requires the plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Stevelman v. Alias Research, Inc., 174 F.3d 79, 84 (2d Cir. 1999) (internal citations omitted). The issue on a motion to dismiss for failure to satisfy the requirements of Rule 9(b) is whether the allegations provide fair and reasonable notice of the time, place, speaker, and content of the alleged misrepresentation or omission. Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128–29 (2d Cir. 1994).

Here, the SAC provides sufficient specification of the relevant statements and their speakers to put Smart One on fair notice of Oladapo's claim. In addition to quoting from the Welcome Letter, Plaintiff specifically identifies both Internet and oral representations, which Plaintiff alleges induced him to switch away from Washington Gas. Plaintiff's allegations that

SmartOne advertised "up to 10% savings on the Washington Gas variable gas supply charge," combined with Plaintiff's allegations that Smart One was aware at the time that the advertising was false based on its business model and Plaintiff's express allegation of reliance, are sufficient to meet the requirements of Rule 9(b) by placing Smart One on notice of the alleged misrepresentations and omissions and the Plaintiff's basis for contending the statements were fraudulent when made.

Smart One argues that it made no actionable misrepresentation, because the promise it made to Oladapo was qualified by the disclaimer that rates would be set at Smart One's "sole discretion." (SAC ¶ 20.) For substantially the reasons stated above, this argument fails to rebut the reasonable inference raised by Oladapo's pleading – namely, that the fact that Smart One's rates consistently rose over time, while those set by Washington Gas fluctuated, indicates that Smart One was not setting its rates in response to "changing gas market conditions," as it represented to Oladapo. (SAC ¶ 20.)

Nor has Smart One demonstrated that its representations to Oladapo mere "puffery" that is not actionable under the law. Maryland courts have held that statements are puffery when they are "vague" or "indefinite assurances" that do not "stake out a claim regarding any concrete facts." Baney Corp. v. Agilysys NV, LLC, 773 F. Supp. 2d 593, 609 (D. Md. 2011). Smart One's statements here do not fit that standard. Rather than generalized statements of 'savings' or 'competitive rates,' Smart One made two concrete promises: "up to 10% savings" in two months, and rates set "in response to changing gas market conditions." (SAC ¶ 20.) Smart One's statements were actionable representations and Oladapo has validly plead a claim under the MCPA and Maryland's common law of fraud, and Smart One's motion to dismiss these counts is denied.

Fraudulent Concealment (Count II) and Negligent Misrepresentation (Count III)

Oladapo also alleges that Smart One fraudulently concealed its true intentions regarding the rates it would set in the future when making its initial representations. A claim for fraudulent concealment requires that the plaintiff prove that: "(1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment." Green v. H & R Block, Inc., 355 Md. 488, 525 (Ct. App. 1999). As his claim sounds in fraud, Plaintiff must meet the pleading requirements of Rule 9(b). Similarly, to state a claim for negligent misrepresentation, the plaintiff must prove that: "(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence." Lloyd, 397 Md. at 136.

Smart One argues that Oladapo's claims fail because it did not owe Oladapo a duty to disclose any additional facts. However, under Maryland law, "[e]ven in the absence of a duty of disclosure, one who suppresses or conceals facts which materially qualify representations made to another may be guilty of fraud." As discussed above, Oladapo adequately pleads, for purposes of both Rule 9(b) and Rule 12, several material facts relating to Smart One's pricing and business model that Smart One concealed from him. Oladapo's pleading therefore suffices to establish a claim for fraudulent concealment and negligent misrepresentation. Smart One's motion is denied as to Counts II and III.

Unjust Enrichment (Count IV)

Oladapo also asserts a claim for unjust enrichment.  Under Maryland law, a plaintiff cannot state a claim for unjust enrichment "where the subject matter of the claim is covered by an express contract between the parties."  Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc., 358 Md. 83, 96 (Ct. App. 2000) (quoting FLF, Inc. v. World Publications, Inc., 999 F. Supp. 640, 642 (D. Md. 1998)).  However, an unjust enrichment claim may be allowed under Maryland law despite the existence of a contract "if there is evidence of fraud or bad faith."  Daniyan, 2015 WL 4031752, at *4.  As discussed above, Oladapo has adequately alleged statutory and common law fraud by Smart One, and therefore may proceed on an unjust enrichment theory as well.  Smart One's motion to dismiss Count IV is denied.

CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is denied.  This Order resolves docket entry no. 38.  The parties are reminded that the initial pre-trial conference will be held on March 18, 2016, at 10:45 a.m.  The parties must confer with each other and file a joint preliminary pre-trial statement in advance of the conference in accordance with the Initial Conference Order (docket entry no. 4).

SO ORDERED.

Dated: New York, New York
January 27, 2016

   /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge